UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                  Case No. 8-14-70190-reg

James J. Bordonaro

         Debtor.       Chapter 7
-----------------------------------------------------------------x
Fido's Fences, Inc.,

         Plaintiff,

                  Adv. Proc. No. 8-14-08279-reg

 v.

James J. Bordonaro,

         Defendant.
-----------------------------------------------------------------x

## *DECISION AFTER TRIAL*

Robert E. Grossman, United States Bankruptcy Judge

   This matter is before the Court pursuant to an adversary proceeding commenced by Fido's Fences, Inc. (the "Plaintiff") against James J. Bordonaro (the "Defendant") under 11 U.S.C. §§ 523(a)(2)(A) & (a)(2)(B), and 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(B), & (a)(5). At trial, and consistent with the Joint Pretrial Memorandum filed by the parties, the legal issues presented for decision related solely to 11 U.S.C. §§ 727(a)(3), (a)(4)(A), and (a)(4)(B). As such, the Plaintiff is deemed to have abandoned the causes of action arising under 11 U.S.C. § 523 and § 727(a)(2)(A), (a)(2)(B), and (a)(5).

   The opportunity for an honest but unfortunate debtor to escape the yoke of debt and receive a fresh start is among the founding principles of this nation, predating the republic. Such a fresh start, as contemplated by the Bankruptcy Code, is not a right but a privilege that is dependent upon strict compliance with the requirements of the Code. Relief from debt is absolutely contingent

1

upon a debtor being forthcoming about his financial condition. The record in this case demonstrates numerous omissions and inaccuracies in the Defendant's bankruptcy filings, the Defendant's failure to produce documents, despite Court order, and the Defendant's redaction of bank statements without justification. These instances of dishonest conduct are grounds to deny the Defendant's discharge under 11 U.S.C. § 727. While the Defendant attempted to rebut the claims by proffering explanations for his deficiencies in disclosure at trial, the explanations did not provide legitimate bases for the Defendant's conduct. In addition. The multiple inaccuracies contained in the Defendant's petition and schedules were not cured by the Defendant's amendment and explanations at trial.

The Court finds that the Plaintiff has met its burden and established by a preponderance of the evidence that the Defendant concealed, destroyed, mutilated, falsified, or failed to keep or preserve records, without justification when the Defendant (i) produced redacted bank statements without justification and (ii) failed to produce his log of cash transactions, despite order by the Court. The Defendant's explanation for his actions rings hollow in the face of the record in this case. Accordingly, the Court denies the Defendant's discharge pursuant to § 727(a)(3). Additionally, the Court finds that the Plaintiff has established by a preponderance of the evidence that the Defendant knowingly and fraudulently made a false oath in the Defendant's bankruptcy case when the Defendant, under penalty of perjury, misstated his income and assets and misrepresented that the Plaintiff held an unsecured claim rather than a secured claim on his Schedules and Statement of Financial Affairs. The Defendant's explanation that that the inaccuracies were the result of innocent mistakes is insufficient to rebut the prima facie case

established by the Plaintiff. Accordingly, the Court denies the Defendant's discharge pursuant to § 727(a)(4)(A).[1]

## *PROCEDURAL HISTORY*

On January 20, 2014 (the "Petition Date"), the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On October 2, 2014, the Plaintiff commenced this adversary proceeding against the Defendant by filing a complaint (the "Complaint"). On October 31, 2014, the Defendant filed an answer to the Complaint. On May 6, 2015, the parties filed a joint pre-trial memorandum (the "Joint Pre-Trial Memorandum"). On May 12, 2015 and September 17, 2015, a trial was held, at which the Defendant testified and Exhibits 1 through 25 were each admitted, and at the closing of which this matter was deemed submitted.

## *FACTS*

The Joint Pretrial Memorandum sets forth certain agreed facts. Additional facts were developed from the trial testimony and exhibits. The Defendant is the sole owner and operator of Advance Graphics Design and Engineering and Advance Graphics Design and Development Corp. (collectively "Advance Graphics"). On March 8, 2013, the Plaintiff obtained a money judgment in the Supreme Court of New York, County of Nassau, against the Defendant and Advance Graphics as a result of the Defendant's default under an October 12, 2012, Stipulation of Settlement (the "Judgment"). On the same day, the Plaintiff docketed the Judgment with the Nassau County Clerk's Office. The Plaintiff filed an execution against property with the Suffolk County Sheriff's Office to collect on the Judgment. An auction of the Defendant's real property located at 1705 North Gardiner Drive, Bay Shore, New York 11706 ("1705 North Gardiner") was

---

[1] For the reasons set for in this Memorandum Decision, the Plaintiff's cause of action pursuant to 727(a)(4)(B) is dismissed.

scheduled for January 21, 2014. One day before the scheduled sale, the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Petition"), which stayed the auction.

The Defendant signed the Petition under penalty of perjury, and acknowledges having read the Petition prior to signing. The Defendant indicated on Schedule A that his real property at 1705 North Gardiner was not encumbered by any liens or claims. The Defendant indicated on Schedule B that he maintained a business checking account at New York Commercial Bank with a balance of $100. The Defendant listed only one secured creditor on Schedule D, Nationstar Mortgage, as holding a first mortgage on the Defendant's real property at 1707 North Gardiner Drive, Bay Shore, New York, 11706 ("1707 North Gardiner"). The Defendant listed the Plaintiff on Schedule F as an unsecured, nonpriority creditor with a claim in the amount of $150,175.14. The Defendant stated on Schedule I that he receives $1,995.58 per month as net income from operating a business and $925 per month in food stamps, for a total monthly income of $2,920.58. The Defendant further stated that his monthly expenses of $2,927.80 result in a monthly net income of -$7.22. The Defendant indicated on his Statement of Financial Affairs ("SOFA") that his sole source of income for 2012 through 2014 was his business, Advance Graphics, and that his total income was $22,255 for 2012, $23,000 for 2013, and $3,100 in 2014 prior to the Petition Date. In addition, the Defendant indicated on his SOFA that he had closed his Capital One checking and savings accounts in March 2013, with remaining balances of $200 and $50, respectively. The Defendant also stated on his SOFA that none of his property had been attached, garnished, or seized within one year preceding the Petition Date and that the suit commenced by the Plaintiff against the Defendant had been "settled per stipulation." Additionally, the Defendant stated on his SOFA that the Defendant had no ownership interest in, or management duties of, any business, and had not

been self-employed, within six years preceding the Petition Date.  The Defendant indicated on his Form 22A Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test") that his sole source of income was from operating a business and that he had monthly gross receipts from the operation of a business of $3,353.17, monthly ordinary and necessary business expenses of $1,390.50, and, accordingly, a current monthly income of $1,962.67, or $23,552.04 per year.

On February 26, 2014, the Plaintiff filed a proof of claim in the amount of $146,958.55 secured by liens against 1707 North Gardiner and 1705 North Gardiner.  On October 2, 2014, the Plaintiff commenced this adversary proceeding by filing the Complaint.  In the Complaint the Plaintiff sought denial of the Defendant's discharge under 11 U.S.C. § 727 as a result of false statements in the Petition and the Defendant's failure to maintain financial records.  The Defendant's alleged false statements on the Petition include, *inter alia*: the Plaintiff was scheduled as an unsecured creditor despite the Defendant's knowledge that the Plaintiff was a secured creditor; the Defendant's 2014, year-to-date, gross income was stated in the Petition as $2,920.58 and $3,100, despite bank deposits of $8,621 during that period; the SOFA indicated that the Defendant had no income other than from employment or operation of a business, despite the Defendant's collection of rental income pursuant to a lease agreement; the SOFA indicated that the Defendant had no interest in any business, despite his sole ownership of Advance Graphics; the SOFA indicated that none of the Defendant's property had been attached, garnished, or seized within one year, despite the Defendant's awareness that the Plaintiff's lien had been recorded within one year of the Petition Date; the SOFA indicated that the Defendant had not issued any financial statement to any financial institution within two years, despite the Defendant's application for a commercial loan and related submission of financial statements within two years

of the Petition Date. The Plaintiff further alleged that the Defendant had redacted information on his bank statements prior to producing them.

On October 28, 2014, the Defendant filed amended schedules (the "First Amended Schedules") to Schedules A, D, F, I, and J, the SOFA, and the Means Test. The Defendant signed the First Amended Schedules, declaring under penalty of perjury that the Defendant had read the First Amended Schedules and that the information contained therein was true and correct to the best of the Defendant's knowledge. Schedule A was amended to reflect that the Plaintiff's claim was secured by liens on the Defendant's real property. Schedules D and F were amended to reflect that the Plaintiff held a secured, rather than an unsecured, claim. Schedule I was amended to change the following entries: (1) employment information, was amended to state that the Defendant was not employed; (2) monthly gross wages, salary, and commissions, (4) gross income calculation, and (7) total monthly take-home pay calculation, were each amended from $0 to $1,760.24; (8a) net income from rental property and from operating a business, was amended from $1,995.58 to $0; (9) all other income, was amended from $2,290.58 to $925.00; (10) monthly income calculation and (12) combined monthly income, were each amended from $2,920.58 to $2,685.24, and; (13) expectation of changes in income, was amended from "No" to "Yes," with the explanation that the Defendant was no longer receiving rental income.[2] Schedule J was amended to change entries: #2, dependents, was amended from "Yes" to "No," and to remove the list of 8 dependents, their relation to the Defendant, and their ages; #23(a), combined monthly income, was amended from $2,927.80 to $2,685.24, and; #23(c), net income, from a negative $7.22 to negative $242.56.[3] The SOFA was amended to change entries: #1, income from employment

---

[2] Attached to the First Amended Schedules was an Exhibit A that was purported to be a list setting forth the specific changes made to the Schedules. However, the changes reflected on the actual schedules, detailed above, are not the same as the purported changes reflected in Exhibit A.

[3] The amendment of the dependents was similarly not included in Exhibit A.

or operation of a business, was changed for 2014 from $3,100 to $7,696, year-to-date as of the Petition Date, for 2013 from $23,000 to $8,202, and for 2012 from $22,255 to no entry; #2, other income, was changed from none to showing $9,800 in rental income and $22,200 in food stamps; #4(b), property attached, was changed from none to listing the Plaintiff's lien on the Defendant's residence; #9, payments related to bankruptcy, was changed from indicating $2000, to the Law Office of Catherine May, to none, and; #18, nature, location, and name of business, was changed from none to include Advance Graphics Design and Development Corp. and Advance Graphics Design and Engineering.

On December 2, 2015, the Trustee, Kenneth Kirschenbaum, filed a notice of discovery of assets. On January 20, 2015, the Defendant filed amended schedules for a second time (the "Second Amended Schedules") that resulted in changes to the Defendant's Schedules B and F, and SOFA. The Defendant signed the Second Amended Schedules, declaring under penalty of perjury that the Defendant had read the Second Amended Schedules and that the information contained therein was true and correct to the best of the Defendant's knowledge. Schedule B was amended to include as personal property $12,000.00 owed to the Defendant by former tenants in back rent and for property damage. Schedule F was amended to reflect a $500.00 unsecured debt owed to the same former tenants. The SOFA was amended to change entry #4, suits and administrative proceedings, executions, garnishments and attachments, to include two actions between the Defendant and the same former tenants.

On September 4, 2015 the Defendant filed amended schedules for a third time (the "Third Amended Schedules") to make amendments to the Defendant's SOFA. The Defendant signed the Third Amended Schedules, declaring under penalty of perjury that the Defendant had read the Amended SOFA and that the information contained therein was true and correct, to the best of the

Defendant's knowledge. The SOFA was amended to change entry #1, income from employment or operation of a business, for 2013 from $8,202.00 to $7,545 "gross income from Operation of D/B/A" and $7,506 for "Income derived from Corporation," and for 2012 from no entry to $40,633.00 "Gross receipts from operation of D/B/A."[4]

At trial, the Defendant produced redacted bank statements in which various amounts and identities of payors and payees were obscured. Exs. 18, 22. The Defendant explained that the redactions were made in order to protect trade secrets—the identities of the vendors with whom he contracts. Trial Tr. pgs 13-16, 43-44 (May 12, 2015) (the "May Trial Tr."). The Defendant's proffered explanation as to why the redacted information constituted trade secrets was that the vendors were "who [the Defendant] worked with." May Trial Tr. pg 15. Counsel to the Defendant also stated that that the Defendant's attempt "to stop the [Plaintiff] from learning the names of the vendors that [the Defendant] worked with" had been a source of contention in the pre-petition relationship of the parties. May Trial Tr. pg 15. Neither explanation provided a viable basis for redacting the information. Additionally, the Defendant's New York Commercial Bank business account statements indicate that the account had a balance of $181.53 on the Petition Date, whereas the Defendant represented on the Petition that the account had a $100 balance. On the second day of trial, the Defendant introduced bank statements for the Defendant's Capital One D/B/A account, which had never previously been produced to the Plaintiff. Trial Tr. pgs 8-10 (Sept. 17, 2015) (the "September Trial Tr."). These statements reflect that the account was open and in use until at least July, 2013, and had a positive balance of $1,068.67 at the end of March, 2013, whereas the Defendant stated on the Petition that the account was closed in March, 2013 with a $200 final

---

[4] Attached to the Third Amended Schedules was an Exhibit A, which was purported to be a list setting forth the specific changes made to the SOFA. However, the changes reflected on the actual SOFA, detailed above, are not the same as the purported changes reflected in Exhibit A.

balance. Defendant claimed to keep a cash log, detailing all of his cash transactions and was ordered by the Court, on May 12, 2015, to produce the document on May 13, 2015, yet failed to produce the cash log at any time. May Trial Tr. pg 26; September Trial Tr. pgs 5-7. Defendant also testified that he used the same bank account to pay business and personal expenses and that he maintained a spreadsheet on which he kept an accounting of his business and personal deductions to claim on his tax returns; the Defendant failed to produce this spreadsheet. May Trial Tr. pgs 17-18. The Defendant also testified that he listed the Plaintiff as an unsecured creditor, despite his knowledge that the Plaintiff held a lien and that, in fact, the Defendant's sole purpose for filing the bankruptcy case was to stay the foreclosure sale and avoid the Plaintiff's lien on his homestead. May Trial Tr. pgs 9-10.

The Defendant testified that the inaccuracies in his schedules were innocent mistakes and that the amendments were honest attempts to rectify these mistakes.[5] However, the timing of the Defendant's amendments to the schedules calls into serious question the Defendant's assertion that the amendments were good faith attempts to meet his disclosure obligations. The Defendant's First and Second Amended Schedules were filed shortly after the filing of the Plaintiff's Complaint and the Trustee's discovery of assets, and the changes appear to be responsive to these filings. Additionally, there are numerous instances of misstatements and dishonest conduct by the Defendant that lead this Court to question the Defendant's credibility as a witness at trial, including making demonstrably false statements regarding the location of his residence, his assets, and his income, to various Federal and New York State agencies and a bank. *See* May Trial Tr. pg 127-131; Exs. 2, 3, 4, 13, 14, 15, 16, 17; *See also In re Bordonaro*, No. 14-70190 (Bankr. E.D.N.Y,

---

[5] The Defendant also seemed to suggest, at times, but never expressly stated that some of his inaccuracies in the Petition and the redaction of his bank statements might be attributable to his first attorney, Catherine May. *See* Trial Tr. pgs 14, 106-107 (May 12, 2015).

9

March 11, 2015), *aff'd*, No. 15-CV-3025 (E.D.N.Y. Nov. 30, 2015).  Based on the conduct of the Defendant, the Court finds that his testimony lacks credibility and is to be discounted.

## *DISCUSSION*

Section 727 governs an individual chapter 7 debtor's discharge.  The provisions of § 727 are construed strictly against the objecting party and liberally in favor of the debtor.  *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996).  The objecting party must prove the elements of § 727 by a preponderance of evidence.  *In re Colish*, 289 B.R. 523, 536 (Bankr. E.D.N.Y. 2002).

**11 U.S.C. § 727(a)(3)**

Section 727(a)(3) provides that a debtor shall be denied a discharge if the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).  This section makes discharge "dependent on a true presentation of the debtor's financial affairs." *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli* ), 463 F.3d 229, 234 (2d Cir. 2006) (internal quotations omitted).  The debtor must provide enough information "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *Schackner v. Breslin Realty Dev. Corp.,* No. 11–CV–2734 (JS), 2012 WL 32624, at *4 (E.D.N.Y. Jan. 5, 2012). Section 727(a)(3) establishes a two-step, burden-shifting approach that makes adequate record-keeping a predicate for a debtor's discharge. *See Cacioli,* 463 F.3d at 235; *Jacobowitz v. Cadle Co.* (*In re Jacobowitz)*, 309 B.R. 429, 436 (S.D.N.Y. 2004).

First, the plaintiff must prove "that the debtor failed to keep [or] preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *In re Cacioli,* 463 F.3d at 235. To meet its initial burden of proving that a debtor has not supplied substantially complete and accurate records, a creditor may show either (1) the inadequacy of the provided records, or (2) the impossibility of ascertaining "the debtor's present financial condition and the nature of any business transaction that occurred within a reasonable period prior to filing" from the tendered records. *In re Sethi,* 250 B.R. 831, 837–38 (Bankr. E.D.N.Y. 2000).

Once the plaintiff satisfies its burden under part one, the burden shifts to the debtor to justify the absence of comprehensive records under all relevant circumstances. *In re Cacioli,* 463 F.3d at 233. The acceptability of a debtor's justification "depends largely on what a normal, reasonable person would do under similar circumstances." *D.A.N. Joint Venture v. McCormack* (*In re McCormack* ), No. 06–1053, 2007 WL 642945, at *1 (2d Cir. Feb. 27, 2007). A debtor's stated justification will satisfy § 727(a)(3) if enough evidence exists "to convince the court of [the debtor's] good faith and businesslike conduct. " *In re Joseph,* Civ. A. No. 91–CV–1114, 1992 WL 96324, at *4 (N.D.N.Y. Apr. 22, 1992) (citation omitted). "Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep." *Sethi,* 250 B.R. at 839 (Bankr. E.D.N.Y. 2000).

The Plaintiff established that the Defendant either failed to keep, or at least, failed to produce, adequate business records, such that the Plaintiff and the Court are unable to accurately ascertain the Defendant's present financial condition and the nature of the Defendant's pre-petition business transactions. The Defendant's redaction of his bank statements regarding the amounts and identities of parties to the transactions, as well as the Defendant's failure to produce his cash log, make it impossible for the Plaintiff and the Court to have an accurate understanding of the

11

Defendant's financial condition. As a result, the Court is unable to use the documents to reconcile or corroborate the information contained in the Petition. The Defendant, in turn, failed to provide an adequate justification for the absence of these records or for the redactions in the records produced. This Court is unpersuaded by the Defendant's argument that the redactions were to protect the trade secrets of the Defendant, especially since the amounts the Defendant paid or was paid are certainly not trade secrets. There appears to have been no good faith basis to redact the bank statements, or to fail to produce the cash log, especially once the Court ordered the production of the cash log.

Accordingly, the Defendant has failed to justify his failure to produce complete bank records and his cash log and, therefore the Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

**11 U.S.C. § 727(a)(4)(A)**

Section 727(a)(4)(A) provides: a discharge will not be granted if "the debtor knowingly and fraudulently, or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A). A party objecting to a debtor's discharge pursuant to § 727(a)(4)(A), must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Carlucci & Legum v. Murray (In re Murray),* 249 B.R. 223, 228 (E.D.N.Y. 2000).

A bankruptcy petition, schedules and related statements are declarations made under penalty of perjury "constitute a statement under oath for purposes of § 727(a)(4)(A). *Nof v. Gannon (In re Gannon),* 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). "Omissions as well as affirmative

misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Adler v. Lisa Ng and Charming Trading Company (In re Adler),* 395 B.R. 827, 841 (E.D.N.Y. 2008). Even "one single false oath or account is sufficient to deny a debtor's discharge." *TD Bank, N.A. v. Nazzaro (In re Nazzaro),* No. 10–74869, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 13, 2013). A debtor's act of amending his schedules can be used to establish that the statements in the original petition were false, but such amendment does not per se establish the debtor's knowledge or fraudulent intent. *See In re Moreo*, No. 07-71258-DTE, 2008 WL 5110967, at *4 (Bankr. E.D.N.Y. Dec. 2, 2008). In determining a debtor's knowledge of the falsehood of a statement "[c]ourts may consider the debtor's education, business experience, and reliance on counsel… but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 695 (E.D.N.Y. 2014).

A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Agai v. Antoniou (In re Antoniou),* 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (citation omitted). "[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir. 1974).

The Plaintiff bears the burden of establishing each element of § 727(a)(4)(A) by a preponderance of the evidence. *Colish*, 289 at 536. "Once a plaintiff produces evidence of a false statement, the burden shifts to the debtor to produce a credible explanation," absent which, "a court may infer fraudulent intent." *In re Virovlyanskiy*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013).

Here, the Petition contained multiple material false oaths. The Petition and the First, Second, and Third Amended Schedules were each signed under penalty of perjury, and thus, are statements made under oath. *See Gannon,* 173 B.R. at 320. The Petition contained numerous

13

material and demonstrably false statements and omissions, including: listing the Plaintiff as an unsecured creditor without a lien; that no property had been attached in the preceding year; the New York Community Bank account had a $100 balance; the Capital One Bank account had been closed in March, 2013 with a $200 balance; the Defendant had not issued any financial statements to any financial institution within two years; that the Defendant did not own any businesses, etc. Additionally, and perhaps most materially, the Defendant made various misrepresentations regarding the amounts and sources of his income, as evidenced both by the testimony at trial and the subsequent amendment of these amounts and sources—the corrections by amendment establish that the Petition contained false statements. These false statements are all material, in that they relate directly to the Defendant's finances, business dealings, and disposition of his property. *See Antoniou*, 515 B.R. at 22.

Based on the record before the Court, the Plaintiff has established by a preponderance of the evidence that the Defendant knew that the above statements were false. The Defendant indicated that he alone handled his business affairs. The Defendant's testimony demonstrated a deep involvement with and understanding of his own finances, as evidenced by his analysis of his bank statements in order to determine and segregate his personal and business deductions. As such, the Defendant would have been aware of the amounts and sources of his income, the amounts in his bank accounts, and the date of closing of his Capital One Account, especially given the fact that he prepared his own tax returns and reviewed the documents in preparing the Petition. Additionally, the Defendant testified that, while reviewing and signing the Petition, he knew that the Plaintiff had obtained a lien on 1705 North Gardiner and that said lien had attached within the prior year. The Defendant also acknowledged that he had prepared a financial statement for the bank's review in connection with his application for a mortgage.

14

The Plaintiff, having established that the Defendant made false statements, created a rebuttable inference of fraudulent intent. The Defendant did not provide a credible explanation as to why the Petition contained the false statements. The Defendant's claim of innocent mistake is unpersuasive given that the Defendant had access to and was familiar with the bank statements and other documents detailing his financial condition, and that he was aware of the Plaintiff's lien. Therefore, the Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).

**11 U.S.C. § 727(a)(4)(B)**

Section 727(a)(4)(B) provides: a discharge will not be entered if "the debtor knowingly and fraudulently, or in connection with the case ... presented or used a false claim." 11 U.S.C. § 727(a)(4)(B). "In order to deny a debtor's discharge under 11 U.S.C. § 727(a)(4)(B), the debtor must have presented or used, with intent to defraud, inflated or fictitious claims in a bankruptcy case." *In re Natale*, 136 B.R. 344 (Bankr. E.D.N.Y. 1992). Here, the Plaintiff has failed to establish that the Defendant scheduled any inflated or fictitious claims. The Defendant's scheduling of the Plaintiff's claim as unsecured, instead of secured, while constituting a false oath for §727(a)(4)(A) purpose, does not constitute a fraudulently presented inflated or fictitious claim. Accordingly, the requested relief under 11 U.S.C. § 727(a)(4)(B), is denied.

## *CONCLUSION*

For the foregoing reasons, the Court finds the Plaintiff has satisfied its burden of showing, by a preponderance of the evidence, that the Defendant is not entitled to a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A) and, accordingly, concludes that the Defendant's discharge is denied.  The Court shall enter judgment consistent with this Memorandum Decision forthwith.



**Dated: Central Islip, New York**  
      **January 12, 2016**

                **Robert E. Grossman**  
                **United States Bankruptcy Judge**

16